UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRICE JAMAR RHODES                                                          PLAINTIFF

v.                                            CIVIL ACTION NO. 3:22-CV-00624-JHM

JERRY COLLINS, *et al.*                                                    DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on the motion for summary judgment filed by Defendants

Jerry Collins (Collins) and David Puckett (Puckett) (collectively, Defendants).  (DN 27).  Plaintiff

Brice Jamar Rhodes (Plaintiff) filed a response to the motion (DN 30), and Defendants filed a

reply.  (DN 31).  For the following reasons, the motion for summary judgment will be granted.

## I.  BACKGROUND

Plaintiff, a pretrial detainee at the Louisville Metro Department of Corrections (LMDC) at

the time he filed suit, filed the original complaint on November 28, 2022.  (DN 1).  Plaintiff

initiated this action against the Louisville Metro Government (LMG), Wellpath Healthcare

(Wellpath), LMDC Director Jerry Collins, LMDC official David Puckett, and Judge Charles

Cunningham.  By Memorandum Opinion and Order, the Court dismissed Plaintiff's claims against

Defendants LMG, Wellpath, and Judge Charles Cunningham pursuant to 28 U.S.C. § 1915A(b)(1).

(DN 8).

With respect to Collins and Puckett, Plaintiff asserted that Defendants violated his

constitutional rights by "holding me in a single cell for over six years, I have been write up clear

since December 2021."  (DN 1, PageID.4).  Plaintiff states, "as of September 29, 2022 I requested

to be let out of a single cell, since I'm write up clear and have no shelf time.  LMDC staff has

denied me for no reason."  (*Id*.).  Plaintiff goes on to allege "I filed my inmate grievance form

about the issue at hand and it was reviewed on October 14, 2022 . . . and I was still denied for no reason." (*Id*.). "So I then turned in [an] inmate grievance appeal form . . . on October 20, 2022 . . . They responded by saying I have a high profile case and for my own safety." (*Id*., PageID.4-5). Plaintiff asserts "there are dorms for people who have high profile cases, and I don't fear for my safety if I'm asking to go to [general population] dorms. Those are flat excuses by staff to keep me in a single cell." (*Id*., PageID.5). Plaintiff states that he is not allowed to receive books, he does not go to the gym, his fiancée is not allowed to write to him, he cannot call his family and lawyers "on time," and that his "body is in pain from being still all day." (*Id*.). Plaintiff asserts that his single-cell confinement for "well past 180 days," is imposed "to target and punish [him] for [his] charges." (*Id*.).

The Court construed Plaintiff's allegations as a claim for violation of the Due Process Clause of the Fourteenth Amendment and allowed Plaintiff's claim to proceed against Defendants Collins and Puckett. (DN 8).

On June 26, 2023, before the exchange of discovery, Plaintiff filed a motion for summary judgment, to which Defendants responded on July 14, 2023. (DNs 18, 21). On September 14, 2023, the Court denied Plaintiff's motion as premature with leave to re-file following certification of completion of discovery. (DN 24). Plaintiff filed a pretrial memorandum on July 27, 2023. (DN 22). Following a request for an extension of time by Defendants (DNs 23, 25) and a motion to reconsider by Plaintiff (DNs 24, 32), Defendants moved for summary judgment. (DN 27). Plaintiff responded (DN 30), and Defendants submitted a reply (DN 31). Fully briefed, the matter is ripe for decision.

**A.**

In their motion, Defendants argue that they are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim on the grounds that: (1) Plaintiff received adequate due process with respect to his confinement to administrative segregation, (2) they were not sufficiently involved in Plaintiff's classification determination, (3) they are entitled to qualified immunity, and (4) Plaintiff's administrative remedies are unexhausted with respect to Defendant Collins.[1]  (DN 27, PageID.148-158).  In support of the motion, Defendants submit an undisputed record, which is summarized below.

The LMDC Special Management Unit (SMU) Policy states that LMDC "shall maintain safe and secure housing for offenders who require detention, protection or whose behavior indicates they require more physical controls than are available in general housing units." (DN 27-2, PageID.166).  "Inmates shall be placed in the Special Management Housing Unit (SMU) only after Administrative consideration and/or a disciplinary hearing."  (*Id*.).  The SMU Policy governs the operation and supervision of inmates housed in Administrative Segregation and Protective Custody status.  (*Id*.).   Under this Policy, Administrative Segregation is defined as a "form of separation from the general population administered by the classification committee or other authorized group when the continued presence of the inmate in the general population would pose a serious threat to life, property, self, staff, other inmates or to the security or orderly operation of the facility."  (*Id*.).  Protective Custody is a form of separation from the general population "for reasons of health or safety. An inmate is admitted to Protective Custody when there is documentation that Protective Custody is warranted and no reasonable alternatives are available." (*Id*., PageID.167).   For both Administrative Segregation and Protective Custody, the inmate's

---

[1] Because the Court finds herein that Plaintiff was afforded adequate due process, it need not reach Defendants' remaining arguments.

status is reviewed by Classification Staff every seven (7) days for the first two (2) months and at least every thirty (30) days thereafter.  (*Id*., PageID.168, 169).

The LMDC Classification Assessment Policy sets forth the classification process by which LMDC determines the needs and requirements of inmates for whom confinement has been ordered and assigns those inmates to housing units and programs according to their needs and existing resources.  (DN 27-1, PageID.160).   The classification process evaluates the following criteria: mental and emotional stability; escape history; medical status; age; PREA screening; history of assaultive behavior; and need to keep inmate(s) separated from others.  (*Id*., PageID.161).  LMDC "shall ensure periodic review of inmate status, as needed in response to changes in inmate behavior or circumstances."  (*Id*.).   The policy additionally authorizes the use of single cells for inmates who indicate the following: maximum custody; inmates with severe medical disabilities or serious mental illness; sexual predators; inmates who are likely to be exploited or victimized by other inmates; and inmates who have other special needs for single-cell housing.  (*Id*., PageID.163).

Defendants cite the affidavit of Meagan Kilkelly (Kilkelly), who attests that she holds the position of Offender Services Manager and is a member of the SMU Committee.  (DN 27-3, PageID.174).   Kilkelly states that the SMU Committee is responsible for reviewing the classification status of any inmates in the SMU, including Plaintiff.  (*Id*.).  According to Kilkelly, the SMU Committee regularly reviews Plaintiff's classification as a single-cell inmate to determine if his placement in a single cell remains warranted.  (*Id*.).  Per Kilkelly, LMDC utilizes a step-down process by which SMU inmates can be returned to the general population: the highest level is "Special Operations Response Team" (SORT), which is single-cell and allows inmate interaction only with SORT team members; next is "high behavior," in which single-cell inmates are permitted contact with non-SORT personnel, but with other curtailed privileges; and lowest

4

level within SMU is administrative classification, where inmates are housed in a single cell, and cannot interact with other inmates, but are otherwise given the full range of privileges granted to any inmate, including mail, visitation, clergy visits, and phone calls. (*Id.*, PageID.174-175). Inmates released from administrative segregation are released to the general population. (*Id.*).

Kilkelly states that Plaintiff was removed from SORT status on August 20, 2020, and was removed from high behavior status on April 20, 2022. Since that time, Plaintiff has been classified as an administrative segregation inmate. (*Id.*). According to Kilkelly, Plaintiff "cannot be placed in the protective custody dorm because it is an 'open walk' dormitory, meaning [Plaintiff] would be able to interact with other inmates. Inmates with an assaultive history, including [Plaintiff], cannot be placed in the protective custody dorm because it houses the LMDC inmates most likely to be targeted for violence." (*Id.*).

Defendants cite to the affidavit of Defendant Puckett. (DN 27-4). Therein, Puckett attests that he holds the position of Classification Floor Team Supervisor and is a member of the SMU Committee, which is responsible for regular review of Plaintiff's classification as a single-cell inmate. (DN 27-4, PageID.177). According to Puckett, the SMU Committee regularly reviews Plaintiff's classification as a single-cell inmate. (*Id.*, PageID.177). Puckett states that Plaintiff "has a total of 49 inmates with whom he has been made incompatible, meaning he cannot be housed with those inmates." (*Id.*). Additionally, Plaintiff "remains in a single cell both because of his dangerous institutional behavior, and also because LMDC has concerns that [Plaintiff] may be targeted for violence" due to him being charged with the murder of two juveniles. (*Id.*, PageID.178).

Defendants also submit excerpts from SMU status logs, Plaintiff's inmate file, disciplinary reports, and incident reports. (DNs 27-5, 27-6, 27-7, 27-8, and 27-9).

The excerpted SMU status logs document Plaintiff's status within administrative segregation,[2] indicating the reason for admission, date of next review, and other notations, including references to disciplinary segregation sanctions.  (DN 27-5, PageID.179-217).  As of February 2023, the logs represent that Plaintiff's last write up was on December 9, 2021, with no incidents since December 12, 2021.  (*Id.*, PageID.210).

Plaintiff's disciplinary reports reveal that on October 20, 2016, Plaintiff threatened to kill and sodomize the family and children of LMDC staff and threatened to hold another staff member hostage.  A disciplinary report was issued, and Plaintiff was found guilty following a hearing and sentenced to 25 days in disciplinary segregation.  (DN 27-8, PageID.337-39).  On October 24, 2016, Plaintiff threw a cup of urine onto a staff member.  Following a disciplinary hearing, Plaintiff was found guilty and sentenced to 45 days in disciplinary segregation.  (DN 27-8, PageID.340-342).  On January 21, 2018, a bottle of suspected feces was confiscated from Plaintiff's cell.  Following a disciplinary hearing, Plaintiff was found guilty.[3]  (*Id.*, PageID.343-44).  On January 20, 2019, Plaintiff damaged LMDC property by pulling cords from a television and throwing them in the trash.  He was found guilty following a disciplinary hearing and sentenced to 20 days in disciplinary segregation.  (*Id.*, PageID.345-47).  On January 28, 2019, Plaintiff struck an inmate work aide in the face during food service.  He was found guilty following a disciplinary hearing and sentenced to 10 days in disciplinary segregation.  (*Id.*, PageID.348-50).  On January 29, 2019, Plaintiff offered a staff member $500 to bring a cell phone to him.  He was found guilty following a disciplinary hearing and sentenced to 10 days in disciplinary segregation.  (*Id.*, PageID.351-52).  On March 7, 2019, Plaintiff threatened to kill a staff member and his family.  He was found guilty

---

[2] For purposes of this motion, the terms administrative segregation, SMU, and single cell are used interchangeably as there is no significant distinction under LMDC's SMU Policy.

[3] The disposition is illegible.

following a disciplinary hearing and sentenced to 25 days in disciplinary segregation. (*Id.*, PageID.353-358). On September 6, 2021, Plaintiff injured an LMDC nurse during an altercation with another inmate. He was found guilty following a disciplinary hearing and sentenced to 60 days in disciplinary segregation. (*Id.*, PageID.359-362).

There are approximately 13 documented incidents in which Plaintiff was observed fighting with or assaulting other inmates. (DN 27-7, PageID.222-336). Plaintiff threw urine and other substances on other inmates and attempted to spit upon them. (DN 27-7, PageID.232, 240, 323). He was noted to be incompatible with or designated as "keep from" other inmates. (*Id.*, PageID.223, 240, 323). On January 31, 2018, Plaintiff was assaulted by another inmate because Plaintiff is called a "child killer." (*Id.*, PageID.287).

In addition to those listed above, the following reports document various incidents of Plaintiff's misconduct or otherwise dangerous behavior. On May 24, 2016, LMDC staff found a hole in Plaintiff's cell with a metal object in it, which Plaintiff flushed before the object could be confiscated. (DN 27-6, PageID.219). Plaintiff threatened to kill and stab a staff member for refusing to allow a cell change on October 4, 2016 (DN 27-7, PageID.242), and swung a broom handle towards glass and threatened to kill a staff member on October 19, 2016. (*Id.*, PageID.243-45). On December 3, 2016, Plaintiff was found to be in possession of a broken mop handle. (*Id.*, PageID.249). On January 1, 2017, a hole was discovered between Plaintiff's cell and a neighboring cell. (*Id.*, PageID.264). Additionally, Plaintiff flooded his cell and attempted to spit at officers on January 5, 2017 (*Id.*, PageID.274); threatened staff during transport to court on January 6, 2017 (*Id.*, PageID.281); was found with gang-related graffiti on his cell wall, identifying staff members by name on January 11, 2017 (*Id.*, PageID.282); threatened to throw urine, feces, and semen on staff members; a cup of urine was confiscated from his cell on January 31, 2017

(*Id.*, PageID.363); flipped a table during a contact visit with his attorney on September 26, 2019 (*Id.*, PageID.316); struck an LMDC nurse in the face with his hand on February 15, 2020 (*Id.*, PageID.321); and punched an LMDC staff member in the head while the staff member was attempting to serve Plaintiff with food on December 9, 2021. (*Id.*, PageID.332). Plaintiff's inmate file shows that in September 2016, Plaintiff to threatened to kill the presiding trial judge and her family during a court appearance. (*Id.*, PageID.220).

Defendants present grievances filed by Plaintiff during his detention at LMDC. (DN 27-10, PageID.365-373). A grievance by Plaintiff regarding his mail dated January 4, 2021, stated, "I have a high profile case, I have enemies." (*Id.*, PageID.367). On May 26, 2022, Plaintiff reported that an inmate work aide threatened him and was trying to poison his food "due to my charges." (*Id.*, PageID.366). Plaintiff reported "threats against my life [by another inmate] due to my case" on January 18, 2023. (*Id.*, PageID.373). Plaintiff's grievance records also reveal a single request to transfer out of administrative segregation. On September 29, 2022, Plaintiff wrote, "I request to be let out of a single cell due to I have no write ups or shelf time. I'm being held in a single cell at this point for no reason." (*Id.*, PageID.371). The response by LMDC dated October 14, 2022, reads:

> You are in a single cell due to your Administrative Segregation status. This status is determined by the department based on the nature of your high profile case and your own safety and security at LMDC. Mr. Puckett does not make the decision regarding individuals staying or leaving Administrative Segregation. That decision is made by the SMU Committee.

(*Id.*, PageID.372).

## B.

In Plaintiff's response to Defendants' motion for summary judgment (DN 30), he does not squarely address Defendants' arguments as to the merits of his Fourteenth Amendment claim, but

repeats his allegations that he has had no incidents since December 2021, and was "write up free and clear well past 180 days." (DN 30, PageID.399). Additionally, Plaintiff states he "had no disciplinary shelf time, so there was no valid reason to be held in confinement single cell." (*Id*.). He also avers that three of his co-defendants from his state case [for which he was detained] were able to "freely enter General Population dorms," and therefore Plaintiff was "singled out and targeted" to be held in isolation. (*Id*.). Plaintiff also avers that Defendants "exaggerate facts" with respect to the number of incompatible inmates. (*Id*., PageID.400). Finally, Plaintiff states that, after the commencement of this lawsuit, Defendant Puckett approached Plaintiff on April 5, 2023, requesting Plaintiff "to go to a P.C. Protective Custody dorm with other inmates with similar charges and high profile cases." (*Id*.). To his response, Plaintiff attaches LMDC's response to grievance appeal dated October 21, 2022, referenced above, regarding his single-cell placement. (DN 30-1, PageID.404). Plaintiff's submission does not otherwise contain attached affidavits, exhibits, or citation to case law.[4] (DN 30, PageID.398-401).

## C.

In their reply (DN 31), Defendants reiterate that Plaintiff does not establish a violation of his constitutional rights and has further failed to offer any evidence to rebut that Plaintiff's segregation status was regularly reviewed and considered, or that his classification determination was substantiated. (DN 31, PageID.407). Defendants state that Plaintiff's responding arguments are unsupported and do not create a triable issue of fact such to survive summary judgment. (*Id*., PageID.408-09). Defendants also state that the Plaintiff's argument regarding the purported status of his co-defendants in general population lacks specificity, is conclusory, and irrelevant to Plaintiff's constitutional entitlement to due process. (*Id*., PageID.409).

---

[4] Plaintiff was informed of the consequences of a summary judgment motion and the requirements of the summary judgment rule by the Court's screening order dated November 13, 2023. (DN 28).

## II.  LEGAL STANDARD

### A.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).  The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56.  "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage."  *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status

as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

### III. DISCUSSION

#### A.

In his complaint, Plaintiff states that he has been in a single cell for six years, but has been "write up clear since December 2021," and his confinement since then has been without justification.  (DN 1, PageID.4-5).  He asserts that his September 29, 2022, request to be released from single-cell housing was denied "for no reason."  (*Id*., PageID.4).  Thus, Plaintiff's chief complaint, liberally read, is that his continued confinement in segregation is unsupported beyond his last disciplinary report in December 2021.[5]

Defendants, construing Plaintiff's claim as solely asserting a procedural due process violation under the Fourteenth Amendment, seek summary judgment on the basis that Plaintiff was afforded due process in connection with LMDC's determination to retain him in administrative segregation pursuant to *Hewitt v. Helms*, 459 U.S. 460 (1983) (*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 484 (1995)), and Sixth Circuit progeny.  (DNs 27, 31).

The Fourteenth Amendment prohibits any State from depriving "any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  The first inquiry in a Fourteenth

---

[5] Plaintiff does not challenge his initial placement into administrative segregation, nor does he challenge LDMC's determination to keep him segregated for most of his pretrial detention.  He also does not take issue with the internal disciplinary proceedings resulting in his placement in disciplinary segregation within SMU.  (DNs 1, 30).

Amendment due process claim is whether the interest at stake is within the Fourteenth Amendment's protection. *Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). "Only after reaching a conclusion that the interest claimed is within that protection does this court consider the form and nature of the process that is due." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002).[6]

The Supreme Court has made clear that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983) (*abrogated on other grounds by Sandin*, 515 U.S. at 484). Thus, where a liberty interest is implicated by an inmate's placement in segregation, "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates," to satisfy due process. *Id.* "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* "The decision whether a prisoner remains a security risk will be based on facts

---

[6] Under *Sandin v. Conner*, 515 U.S. 472 (1995), a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of his sentence." 515 U.S. 472, 487. Mere placement in administrative segregation is "not an atypical and significant hardship, as intended by *Sandin*." *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In this regard, courts generally consider the nature and duration of a stay in segregation in determining whether it imposes an atypical and significant hardship. *See Harden-Bay v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). The Court notes that, in the Sixth Circuit, whether the *Sandin* "hardship test" governs the procedural due process claims of pretrial detainees is unsettled. *See Johnson v. Grayson Cnty., KY Det. Ctr.*, No. 21-5772, 2022 WL 3479501, at *2 (6th Cir. May 27, 2022) (acknowledging that there is "no precedent deciding this issue either way."); *see also Cornett v. Webb*, No. CIV.A. 02-400, 2004 WL 3437504, at *5 (E.D. Ky. May 13, 2004) (recognizing "some issue" as to whether *Sandin* applies to pretrial detainees and collecting cases). While courts in this Circuit have routinely applied the *Sandin* hardship test to pretrial detainees in determining whether a liberty interest is implicated by segregation, *see Polk v. Parnell*, 132 F.3d 33 (6th Cir.1997) (short stay in disciplinary segregation was not such an atypical and significant hardship as to create a liberty interest requiring due process); *Webb v. Bucholtz*, No. 1:20-CV-1036, 2021 WL 804721, at *3 (W.D. Mich. Mar. 3, 2021) (10-month placement in segregation fails to implicate a liberty interest entitling detainee to due process); *Velasquez v. Lewis*, No. 4:20CV-00172-JHM, 2022 WL 1914072, at *2 (W.D. Ky. June 3, 2022) (60-day placement in segregation not atypical and significant hardship), the Court does not reach this question as a liberty interest warranting procedural protections has been presumed, as discussed *infra*.

relating to a particular prisoner—which will have been ascertained when determining to confine the inmate to administrative segregation—and on the officials' general knowledge of prison conditions and tensions[.]" *Id.*[7]

The Sixth Circuit has further explained that "the decision to continue confinement must be supported by "some evidence or indicia of reliability." *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris*, 465 F. App'x at 484-85. "Where the placement in administrative segregation continues for several years, due process requires that the prisoner receive meaningful, periodic reviews and that the continuance of segregation be supported by some evidence." *Jones v. Raye*, No. 12-6568, 2014 WL 10319865, at *2 (6th Cir. June 3, 2014) (citing *Selby v. Caruso,* 734 F.3d 554, 559 (6th Cir. 2013)); *accord*, *Finley v. Huss*, No. 23-1083, --- F.4th ----, 2024 WL 2024 WL 2309361, at *17 (6th Cir. May 22, 2024) ("once [an] inmate is placed in segregated housing, due process further requires periodic review of his confinement to ensure it is supported by some evidence") (citation and quotation marks omitted).

---

[7] A number of circuit courts have determined that *Hewitt*'s due process protections apply to pretrial detainees in administrative segregation. *See Williamson v. Stirling*, 912 F.3d 154, 188 (4th Cir. 2018) ("The combined force of *Bell* and *Hewitt* strongly suggests, however, that pretrial detainees subjected to administrative segregation merited at least the minimal level of process established by *Hewitt* in 1983."); *Taylor v. Comm'r of N.Y.C. Dep't of Corr.*, 317 F. App'x 80 (2d Cir. 2009) (pretrial detainees are entitled to the procedures set forth in *Hewitt* when placed in administrative segregation.); *Welsh v. Lubbock Cnty.*, 70 F.4th 869, 872 (5th Cir. 2023) ("*Hewitt* continues to provide the correct framework for determining the procedural protections to which a pretrial detainee is entitled to ensure that solitary confinement is not imposed as punishment.") (concurring opinion); *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007) (while the process explained in *Hewitt* applies to sentenced inmates, it provides "a floor for what pretrial detainees may expect."); *see also*, *e.g.*, *Cantrell v. Fowler*, 875 F.2d 862 (6th Cir. 1989) (In pre-*Sandin* case, finding "[a]s a pretrial detainee not facing the loss of good time credit, Cantrell is entitled to due process in disciplinary proceedings as enunciated in *Hewitt v. Helms*, 459 U.S. 460 (1983)."); *but see Rapier v. Harris*, 172 F.3d 999, 1004–05 (7th Cir. 1999) ("We are aware that *Sandin* distinguishes between convicted prisoners and pretrial confines, but we do not believe that the distinction made by the Court, read in context, justifies the continued vitality of the *Hewitt* approach in dealing with pretrial confinees."). The Court applies *Hewitt* in this case, premised upon the assumption that a protected liberty interest exists.

An inmate's confinement in segregation may not be for pretextual reasons. *See Selby*, 734 F.3d at 560. However, a written rationale by jail officials for an inmate's placement in segregation is not required. *Rogers v. Johnson*, 56 F. App'x 633, 636–37 (6th Cir. 2002) ("A prisoner is not entitled to a written statement explaining the reasons for his placement in administrative segregation.") (citing *Touissant v. McCarthy*, 801 F.2d 1080, 1100–01 (9th Cir. 1986)).

In their motion for summary judgment, Defendants presume that Plaintiff has a cognizable liberty interest due to the atypical duration of his administrative segregation, but posit that Plaintiff was provided with sufficient due process because LMDC afforded Plaintiff periodic reviews supported by "some evidence" as required by *Hewitt* and *Harris*, *supra*. (DN 27, PageID.149-52). Plaintiff does not dispute that periodic reviews of his classification status were conducted, nor does he challenge the meaningfulness of that process. Rather, Plaintiff challenges LMDC's justification in that he is being held for "no valid reason" following his last infraction in December 2021. (DN 30, PageID.399). The focus of the Court's inquiry, then, is whether LMDC's determination to continue Plaintiff's segregation is supported by "some evidence or indicia of reliability." *Harris*, 465 F. App'x at 485.

Viewing the facts and any inferences that can be drawn from those facts in the light most favorable to Plaintiff, as the Court is required to do on a motion for summary judgment, the Court finds that Plaintiff fails to show that there is a genuine dispute for trial concerning his continued placement in administrative segregation. *See generally*, *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007).

Here, Defendants produce evidence that the justification to continue Plaintiff's SMU placement is due to "his dangerous institutional behavior, and also because LMDC has concerns that [Plaintiff] may be targeted for violence because he is charged with the murder of two

juveniles." (DN 27-4, PageID.178). Further, they cite his "assaultive history," which precludes his placement in open-walk protective custody, where he would interact with inmates that are "likely to be targeted for violence." (DN 27-3, PageID.175). Plaintiff's inmate file, disciplinary reports, and incident reports set forth in detail the dangerous and assaultive behavior referenced by the SMU committee members, which includes repeated instances of violence towards staff and inmates, possession of contraband and makeshift weapons, throwing of urine, feces, and other fluids, spitting, and a potential escape attempt. (DNs 27-6, 27-7, 27-8). Plaintiff does not challenge the verity of any of these documents, and his extensive disciplinary and misbehavior history is uncontroverted. Similarly, Plaintiff's own grievances to LMDC staff state that he is being targeted, "has enemies," and has requested "keep aways" from other inmates. (DN 27-10, PageID.366, 367, 373). Accordingly, Plaintiff raises no genuine dispute as to whether "some evidence or indicia of reliability" supports the determination. *Harris*, 465 F. App'x at 485 (reports of misconduct constitute "some evidence" supporting the decision to continue segregation, "[g]iven Harris's history of violent and disruptive behavior, a jury could only have found that the decision to continue Harris's segregation was a legitimate and reasonable one.") (internal quotation marks omitted); *see also Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) (affirming dismissal for failure to state a claim, finding prisoner received process to which he was entitled where "Powell received periodic reviews of his status, and . . . the hearing officer's determination that Powell fought with another inmate and possessed a weapon provided some evidence to support his continued detention in administrative segregation); *Jones v. Lesatz*, No. 2:20-CV-244, 2021 WL 286532, at *5 (W.D. Mich. Jan. 28, 2021) (dismissing complaint where "Plaintiff has received segregation reviews on a monthly basis, has been interviewed . . . on a yearly basis, and has exhibited serious behavioral issues while in segregation, his current confinement in administrative

segregation does not implicate his procedural due process rights."); *Dickerson v. Davids*, No. 1:21-CV-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021) (dismissing complaint where plaintiff "received seven prisoner assaults/fights, multiple possessions of weapons, multiple staff assaults/serious injury, and Homicide in 2016 of his cell mate . . . .  Such a record provides ample support for the [committee] to conclude that continuing him in [segregation] served the safety and security of the facility."); *cf. Selby*, 734 F.3d at 560 (material issue of fact existed as to whether extended segregation was supported by some evidence where, among other things, the plaintiff had only four rule violations in ten years).

While Plaintiff points to his improved institutional behavior since December 2021 (DN 27, PageID.140), the fact that Plaintiff has enjoyed a recent period of being "write up free" is not sufficient to create a triable issue for a jury.  The Sixth Circuit rejected a similar argument in *Harris*, wherein the plaintiff pointed to a one-year period during which he incurred no major misconduct violations in support of his argument that the prison's monthly segregation reviews were a "sham."  *Harris*, 465 F. App'x at 485-86.  Prior to that period, however, the plaintiff was found guilty of multiple misconduct reports including threating staff, assaulting staff, disobeying staff orders, destruction of property, and threatening behaviors.  *Id.*  The Sixth Circuit explained,

> Although the reviews of his confinement reflect sporadic periods of good behavior . . . this acceptable behavior is intermingled with troubling reports of violent, explosive incidents.  Even though Harris received no misconduct citations during this period, the jury could only find that the decision to continue segregation was not a sham.  As the district court noted, "[t]he fact that [Harris] disagrees with the reasoning and recommendations of the [reviewing committee] does not render the periodic reviews constitutionally deficient."

*Id.* at 486 (quoting *Harris v. Caruso*, No. 2:08–cv–105, 2009 WL 2777160, at *3 (W.D. Mich. Aug. 31, 2009)).  Plaintiff cites to no authority supporting the proposition that his continued

confinement must be premised upon recent infractions or incidents. To the contrary, LMDC officials' determination to continue Plaintiff's segregation based upon his significant, prior misconduct is supported by some evidence. *See, e.g., Hartley v. Armstrong*, No. 16-10916, 2022 WL 989329, at *7 (E.D. Mich. Mar. 31, 2022) ("There is no constitutional mandate for any especially elaborate or thorough procedure in such periodic reviews, nor is there any requirement that reviewing officials must gather or present fresh evidence before deciding to continue a placement based on their evaluation of past, established facts."); *see also Raye*, 2014 WL 10319865, at *2 ("The reason for the continuances—the seriousness of his attack on the corrections officers—was supported by some evidence, as a grand jury had found sufficient evidence to indict him. Jones's allegation that the reviews were somehow a "sham" is conclusory."); *Powell*, 720 F. App'x at 227 (a violent disciplinary infraction provided some evidence to support continued segregation); *Ford v. Westbrooks*, No. 3:18-CV-01273, 2019 WL 2395527, at *4 (M.D. Tenn. June 6, 2019) (plaintiff failed to state a due process claim where he underwent monthly segregation reviews in which his clean disciplinary record since placement in segregation was noted).

Moreover, Plaintiff presented this argument to LMDC officials by way of a grievance dated September 29, 2022, in which he requested release from single-cell confinement. Plaintiff was advised that his status "is determined by the department based on the nature of your high-profile case and your own safety and security at LMDC." (DN 27-10, PageID.372). Thus, LMDC officials reviewed Plaintiff's placement and informed him of the reasons therefor, and while he may disagree with the SMU Committee's determination to continue his segregation, such disagreement does not rise to a constitutional infirmity. *See Bond v. Derrick Shofield*, No. 3:13-0734, 2013 WL 6635041, at *6 (M.D. Tenn. Dec. 17, 2013), *report and recommendation adopted sub nom. Bond v. Shofield,* No. 3-13-0734, 2014 WL 297886 (M.D. Tenn. Jan. 27, 2014) ("The

Due Process Clause is not violated because the plaintiff disagrees with the decisions made by prison officials.  Nor is the plaintiff entitled to any type of in depth explanation from prison officials of the reasons for his placement in administrative segregation. . . . The decisions about the exact manner of the plaintiff's confinement within the prison is simply a matter left to the discretion of prison officials.") (citations omitted).

Finally, Plaintiff's statements that Puckett offered Plaintiff a protective custody dormitory on April 5, 2023, and that his similarly-charged co-defendants are housed in general population, are bare assertions that are insufficient to withstand a motion for summary judgment.  *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.") (citation omitted); *Perry v. Agric. Dep't*, No. 6:14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").  Plaintiff proffers no evidence to support these assertions, and his *pro se* status does not relieve him of his obligation under Rule 56.  *See e.g.*, *United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

In sum, the decision to retain Plaintiff in SMU segregation—based upon his assaultive history, dangerous institutional behavior, and propensity to be a target of violence himself—is supported by a voluminous record of disciplinary and incident reports which constitutes some evidence or indicia of reliability as due process requires.  Plaintiff fails to present any evidence showing that the determination to keep him in the SMU was unsupported by some evidence and fails to raise any genuine issue of fact to support his due process claim.  "[A] reasonable jury could

only conclude," therefore, that Plaintiff received the process that was due to him.  *See Raye*, 2014 WL 10319865, at *2; *see also Settle v. Parris*, No. 3:19-CV-3, 2021 WL 1566074, at *17 (E.D. Tenn. Apr. 21, 2021) (granting summary judgment where plaintiff failed to present any evidence showing that he did not receive meaningful, periodic reviews or that his continued confinement in the SMU was unsupported by "some evidence").

The Court therefore finds that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment procedural due process claim arising from his continued administrative segregation.

## IV.  CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 27) is **GRANTED**.

Date:  May 30, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
         Counsel of record
4414.015